IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IIITEC, LIMITED, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-19-3386 |
| | § | |
| WEATHERFORD TECHNOLOGY | § | |
| HOLDINGS, LLC, | § | |
|     Defendant. | § | |

# **MEMORANDUM AND ORDER**

This case is before the Court on the Motion to Dismiss or for More Definite Statement ("Motion to Dismiss") [Doc. # 25] filed by Defendant Weatherford Technology Holdings, LLC ("Defendant" or "Weatherford").[1] Plaintiff iiiTec, Limited ("Plaintiff" or "iiiTec") filed a Response [Doc. # 37], and Weatherford filed a Reply [Doc. # 44]. Having reviewed the record and the applicable legal authorities, the Court **denies** the Motion to Dismiss.[2]

---

[1] Also pending is Weatherford's Motion for Sanctions [Doc. # 30], to which Plaintiff filed a Response [Doc. # 41], and Weatherford filed a Reply [Doc. # 46]. Because the Court denies the Motion to Dismiss or for More Definite Statement, sanctions under Rule 11 of the Federal Rules of Civil Procedure are inappropriate. The Motion for Sanctions is **denied**.

[2] The information Weatherford seeks through its alternative request for a more definite statement can be obtained through discovery. Therefore, the Motion for More Definite Statement is **denied**.

I.      **BACKGROUND**

Plaintiff iiiTec alleges in the First Amended Complaint that Petrowell Limited ("Petrowell") developed a "radio frequency identification device ("RFID") controlled circulating sub for use in the drilling market of the oilfield service industry." First Amended Complaint [Doc. # 14], ¶ 9. Petrowell later discovered that Marathon Oil Company ("Marathon") held United States patents covering the use of RFID in downhole operations. *See id.* Plaintiff alleges that in early 2006, "Petrowell signed an exclusive license agreement with Marathon for all applications in the downhole environment for RFID technology." *Id.*, ¶ 10. Later that same year, Marathon moved its RFID technology to a new company, In-Depth Systems, Inc. ("In-Depth"). *See id.*, ¶ 11.

Plaintiff alleges that in August 2008, it entered into a Technology Development Agreement ("TDA") with Marathon and Petrowell.[3] *See id.*, ¶ 14. Under the TDA, Marathon is granted rights to new developments and/or improvements to the RFID technology made during the course of the TDA, which are defined as "Assigned IP" in the TDA. *See id.*, ¶ 16 (citing TDA ¶ 9.9). The TDA provides further that Marathon "shall grant to In-Depth or Developers [Petrowell and Plaintiff] licenses in any Assigned IP" depending on Marathon's agreement with In-Depth and others. *Id.*

---

[3]      The TDA is attached to the First Amended Complaint as Exhibit 2.

(quoting TDA ¶ 9.9). The TDA states that if assigned to the Developers, the Assigned IP license to Plaintiff shall be exclusive in the Drilling Field or Coiled Tubing Field. *Id.* (citing TDA ¶ 9.9).

Plaintiff alleges that the TDA included a "Program Plan" for "Program Tools" to be developed, and for the Developers to pay a technology development fee to Marathon. *See id.*, ¶¶ 21-22. Plaintiff alleges that as it developed a specific "Program Tool," it received a license covering that tool.[4] *See id.*, ¶ 22. Plaintiff alleges that the amount of the technology development fee was calculated based on a stated value for each tool and the "Gross Revenues" Plaintiff received from selling, renting, or using the tool. *See id.*, ¶ 23. Plaintiff alleges that, pursuant to the terms of the TDA, it paid a 17.5% fee, totaling $290,801.24, to Marathon in February 2013. *See id.*, ¶ 24.

In April 2017, Weatherford and Marathon entered into an IP Purchase Agreement which stated that Marathon assigned ownership rights in the Assigned IP. *See id.*, ¶ 26. Plaintiff alleges that the TDA prevents Marathon from assigning its rights or obligations under that agreement "without the prior written consent of the Developers [and] any purported assignment or delegation without such consent [is] voidable and ineffective." *Id.* (quoting TDA ¶ 23). Plaintiff alleges that it has not

---

[4] Plaintiff alleges that even if the TDA is ambiguous, "the Parties actually treated the Program Tools as being licensed to Plaintiff iiiTec as they were developed." First Amended Complaint, ¶ 25.

consented to any assignment of the Assigned IP to Weatherford. *See id.*, ¶ 29. Plaintiff alleges that the IP Purchase Agreement provides also that the RFID Technology "shall remain subject to any and all rights and licenses granted" under the TDA. *Id.*, ¶ 27.

Plaintiff filed this lawsuit against Weatherford seeking primarily a declaratory judgment that any assignment of the Assigned IP by Marathon to Weatherford is invalid. *See* First Amended Complaint, Count 1. As an alternative, and only if there is a finding that the assignment to Weatherford is valid without Plaintiff's consent, Plaintiff seeks a declaratory judgment that it has a valid license under the TDA that is binding on Weatherford (Count 2), and asserts a breach of contract claim (Count 3). In Count 4 of the First Amended Complaint, Plaintiff seeks to recover its reasonable and necessary attorney fees.

Weatherford filed its Motion to Dismiss and Motion for Sanctions. Weatherford argues that the transfer of the Assigned IP from Marathon to Weatherford does not require Plaintiff's consent, that the TDA does not grant Plaintiff a license in the Assigned IP, and that there is no viable breach of contract claim because Weatherford is not a party to the TDA. The pending motions have been fully briefed and are now ripe for decision. The Court denies the Motion to Dismiss and the Motion for Sanctions.

## II. STANDARD FOR MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "is viewed with disfavor and is rarely granted." *See Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011)); *Shaikh v. Texas A&M Univ. Coll. of Med.*, 739 F. App'x 215, 218 (5th Cir. June 20, 2018). The Court accepts the factual allegations in the complaint as true, and construes the facts in the light most favorable to the plaintiff. *See Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 249 (5th Cir. 2017) (citing *Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017)). The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019); *Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and "then determine whether they plausibly give rise to an entitlement to relief." *See Iqbal*, 556 U.S. at 679; *Doe v. Robertson*, 951 F.3d 383, 387 (5th Cir. 2014).

"The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays*

*Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)); *see also Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019); *Walch v. Adjutant General's Dep't of Tex.*, 533 F.3d 289, 294 (5th Cir. 2008) (on a Rule 12(b)(6) motion, documents attached to the briefing may be considered by the Court if the documents are sufficiently referenced in the complaint and no party questions their authenticity).

### III. ANALYSIS

#### A. Count 1 - Assignment to Weatherford Without Consent

Weatherford argues that Count 1 should be dismissed because the TDA's requirement for the Developers' consent prior to assignment applies only to an assignment of the TDA itself, not to the assignment of the Assigned IP to Weatherford under the IP Purchase Agreement. The TDA provides that Marathon "may not assign or delegate its rights or obligations under [the TDA] without the prior written consent of the Developers [and] any purported assignment or delegation without such consent will be voidable and ineffective." TDA [Doc. # 15-1], ¶ 23. Plaintiff alleges clearly and plausibly that ownership of the Assigned IP is a "right" that Marathon obtained

under ¶ 9.6 of the TDA[5] and, therefore, assignment of that right requires Plaintiff's prior written consent to be effective. *See* First Amended Complaint, ¶¶ 26, 29.

The TDA requires Plaintiff's consent for Marathon to assign its "rights or obligations under [the TDA]," and Plaintiff alleges plausibly that Marathon's ownership of the Assigned IP is a right it acquired under ¶ 9.6 of the TDA. Therefore, Plaintiff alleges a plausible factual basis for its assertion that Marathon's assignment of the Assigned IP -- a right under the TDA – required Plaintiff's prior written consent. The Court denies Weatherford's Motion to Dismiss Count 1 of the First Amended Complaint.

### B. Count 2 - Existence of License in Assigned IP[6]

Weatherford argues that Count 2 should be dismissed because the TDA does not grant a license to Plaintiff. In the First Amended Complaint, Plaintiff alleges that

---

[5] Paragraph 9.6 of the TDA states:

> Any IP that is conceived, originated or developed solely or jointly by any Developer Entity, with or without [Marathon] and any third party, in the course of the Program, and any IP that is derived by any Developer Entity from, arising out of, or relating to the RFID Technology or Confidential Information, shall belong to [Marathon] and be owned solely by [Marathon], and the Developer Entities hereby assign to [Marathon] all right, title and interest therein, including all interest in . . . "Assigned IP."

[6] Counts 2 and 3 are asserted only as an alternative to Count 1 in the event there is a finding that Marathon's assignment of the Assigned IP to Weatherford is valid.

the development of Program Tools granted a license, effective upon development of the specific Program Tool, to the Developer. *See id.*, ¶ 22. Plaintiff alleges that the existence of a license allowed Plaintiff to market the Program Tools it developed, and required it to pay a "technology development fee" to Marathon in an amount based in part on the "Gross Revenues" received by Plaintiff in connection with marketing the tool. *See id.*, ¶¶ 22-23 (citing TDA ¶ 10.2; TDA Exh. 4 and Amended Exh. 4). Paragraph 10.2 of the TDA requires Plaintiff to pay Marathon a "technology development fee on the Gross Revenue of both sales and rental of all Exclusive Tools and Non-Exclusive Tools . . .." TDA ¶ 10.2. Moreover, Plaintiff alleges that the parties to the TDA intended and treated the Program Tools as being licensed as each tool was developed, even if the language in the TDA is ambiguous. *See id.*, ¶ 25.

Weatherford argues that the technology development fee was not based on the existence of a license, but was required under the TDA whether or not there was a license. Weatherford's argument is not persuasive at this stage of the proceedings. Paragraph 10.4 of the TDA provides that Plaintiff "will not be responsible for payment" of technology development fees until it has received payment for the tools from its customer. *See* TDA, ¶ 10.6. If, during the term of the TDA, the total amount of technology development fees paid to Marathon by the Developers equals

"US$23.7MM," Plaintiff is no longer required to pay the technology development fee. *See* TDA, ¶ 10.5.

Plaintiff's allegations plausibly state a factual basis for the existence of a license under the TDA based on the parties' intent and conduct under the TDA, particularly in connection with the payment to Marathon of the technology development fee based on marketing of the "Program Tools," tools which Plaintiff argues it would not be allowed to market absent a license from Marathon. Therefore, the allegations in the First Amended Complaint are adequate to avoid dismissal under Rule 12(b)(6). The Motion to Dismiss Count 2 is denied.

### C. Count 3 - Breach of TDA

Weatherford argues that Count 3 should be dismissed because it was not a party to the TDA. Plaintiff alleges that the IP Purchase Agreement between Weatherford and Marathon stated that the Assigned IP "shall remain subject to any and all rights and licenses" granted under the TDA. *See id.*, ¶¶ 27-28. Plaintiff argues that, as a result, Weatherford obtained the Assigned IP subject to Plaintiff's right to receive a license, and assumed Marathon's rights and obligations under the TDA.

Weatherford argues that Plaintiff's position "is not true" and "simply makes no sense." *See* Reply [Doc. # 44], pp. 9, 10. While Weatherford's argument may ultimately succeed, it is not a basis for dismissing Count 3. Plaintiff alleges a

plausible factual basis for its position that Weatherford obtained the Assigned IP subject to the TDA, and assumed Marathon's obligations under that agreement. The Motion to Dismiss Count 3 is denied.

### D. Count 4 - Claim for Attorney Fees

Weatherford seeks dismissal of Plaintiff's claim for attorney fees. Weatherford argues that Plaintiff is not entitled to recover fees because Counts 1 through 3 should be dismissed. As explained above, the Court denies the Motion to Dismiss Counts 1 through 3. Therefore, the Motion to Dismiss Count 4 is likewise denied.

## IV. CONCLUSION AND ORDER

Based on the foregoing, Plaintiff has adequately alleged a plausible claim for relief in this case. Accordingly, it is hereby

**ORDERED** that the Motion to Dismiss or for More Definite Statement [Doc. # 25] is **DENIED**. It is further

**ORDERED** that the Motion for Sanctions [Doc. # 30] is **DENIED**.

SIGNED at Houston, Texas, this **20th** day of **December, 2019**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE