United States District Court
Southern District of Texas
**ENTERED**
January 14, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IIITEC LIMITED, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-19-3386 |
| | § | |
| WEATHERFORD TECHNOLOGY | § | |
| HOLDINGS, LLC, | § | |
| MARATHON OIL COMPANY, and | § | |
| IN-DEPTH SYSTEMS, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, iiiTec Limited ("iiiTec"), brings this action against defendants, Weatherford Technology Holdings, LLC ("Weatherford"), Marathon Oil Company ("MOC"), and In-Depth Systems, Inc. ("In-Depth"), seeking declaratory judgment that Weatherford does not have rights to any Assigned IP subject to iiiTec's exlcusive license (Count I), that iiiTec's exclusive license to the Assigned IP is valid and binds Weatherford (Count II), breach of contract (Count III), and attorney's fees (Count IV). Pending before the court are Plaintiff's Motion to Reconsider Memorandum Opinion and Order and Final Judgment and/or Motion for New Trial or to Modify the Judgment ("Plaintiff's Motion to Reconsider") (Docket Entry No. 192), Motion for Leave to Seal Exhibits to Plaintiff's Motion to Reconsider Memorandum Opinion and Order and Final Judgment and/or Motion for New Trial or to Modify the Judgment ("Plaintiff's Motion to Seal Exhibits") (Docket Entry

No. 193), and Opposed Motion for Leave to File Reply in Support of Plaintiff's Motion to Reconsider Memorandum Opinion and Order and Final Judgment and/or Motion for New Trial or to Modify the Judgment ("Plaintiff's Motion for Leave to File Reply") (Docket Entry No. 196).  For the reasons stated below, Plaintiff's Motion to Reconsider will be denied, Plaintiff's Motion to Seal Exhibits will be denied, and Plaintiff's Motion to File Reply will be granted.


## I. <u>Factual and Procedural Background</u>

### A.    **Factual Background**

MOC licensed "On Depth Positioning Technology" using Radio Frequency Identification Device ("RFID") technology to In-Depth Systems, Inc. ("In-Depth") pursuant to an agreement entered into as of May 3, 2001, an Addendum entered on April 7, 2006, and an Addendum No. 2 entered on April 26, 2010.[1]

Pursuant to a License Agreement entered on January 30, 2007, and amended on November 1, 2007, In-Depth granted iiiTec a non-

---

[1]Amended and Restated License Agreement, Docket Entry No. 98-1, pp. 2 ("entered into as of May 3, 2001), 3 ¶ 1.03 (described licensed technology), 27-29 (Addendum), 30-34 (Addendum No. 2).  <u>See also</u> Third Amended Complaint, Docket Entry No. 146, p. 5 ¶ 15(recognizing that MOC held patents covering the use of RFID in downhole operations and had licensed rights to those patents to In-Depth for use with respect to On Depth Positioning Technology).  Page numbers for docket entries refer to the pagination inserted at the top of the page by the court's electronic filing system.

exclusive sub-license to portions of the RFID technology licensed from MOC.[2]  The portions of RFID technology that In-Depth sub-licensed to Plaintiff  pertained to "RFID Reverse Application Drilling Assembly" and "RFID Reverse Application Methods."[3]

On August 19, 2008, iiiTec entered into a Technology Development Agreement ("TDA") with MOC and Petrowell Limited ("Petrowell"),[4] pursuant to which MOC agreed to fund development of RFID technology with up to $20 million over a four-year period,[5] and iiiTec and Petrowell, referred to collectively as "Developers,"[6] agreed that

> [a]ny IP that is conceived, originated or developed
> solely or jointly by any Developer Entity, with or
> without MOC and any third party, . . . and any IP that is
> derived by any Developer Entity from, arising out of, or
> relating to the RFID Technoloy or Confidential
> Information, shall belong to MOC and be owned solely by
> MOC, and the Developer Entities hereby assign to MOC all
> right, title and interest therein, including all interest
> in copyrights ("Assigned IP"). Accordingly, except as
> expressly set forth herein, no Developer Entity shall
> have rights to IP developed . . . or derived by any
> Developer Entity from, arising out of, or relating to the

---

[2]License Agreement, Docket Entry No. 98-13, pp. 37-40, and Docket Entry No. 98-14, pp. 2-19.  This License Agreement may also be found in a single instrument at Docket Entry No. 115-5.

[3]Id. at §§ 1.03-1.04, Docket Entry No. 98-13, pp. 38-39.

[4]TDA, Docket Entry No. 1-2.

[5]Id. at § 2, Docket Entry No. 1-2, pp. 5-6.

[6]Id. at 1.  See also id. § 1.9, Docket Entry No. 1-2, p. 3 (defining "Developer Entities" to "mean[] both Developers, their Affiliates and their collective Representatives, Contractors and Licensees").

> RFID Technology or Confidential Information. Developers
> shall develop, use, maintain and document policies,
> processes and systems approved by MOC to diligently
> protect MOC's rights in Assigned IP and to report the
> development of material Assigned IP to MOC. Developers
> shall provide MOC with access to such policies, processes
> and systems, and to documentation of Assigned IP, and
> shall include information regarding the same and its
> efforts to protect Assigned IP in annual reports and at
> MOC's request.[7]

The TDA provided that

> MOC shall grant to In-Depth or Developers licenses in any
> Assigned IP ("Assigned IP Licenses"), depending on MOC's
> agreement with In-Depth and others. If assigned to
> Developers, the Assigned IP Licenses shall be exclusive
> to Petrowell in the Completion Field and to iiiTec in the
> Drilling Field or Coiled Tubing Field. . . iiiTec's
> Assigned IP Licenses will survive so long as the Drilling
> Field and Coiled Tubing Technology Development Fees are
> paid to MOC and iiiTec is otherwise in compliance with
> its obligations in this Agreement. The Assigned IP
> Licenses may be sublicensed by the Developers within
> their respective fields.[8]

The TDA also provided that

> iiiTec shall pay to MOC a technology development fee on
> the Gross Revenue of both sales or rental of all
> Exclusive Tools and Non-exclusive Tools related to the
> Drilling Field and the Coiled Tubing Field, regardless of
> what Person collects the price paid. The fees for
> individual tools (Exclusive & Non-exclusive) are listed
> in Exhibit 1. Drilling Field and Coiled Tubing Field
> tools that are subsequently added to the Program will
> have a minimum Technology Development Fee of 4.5% of
> sales or 17.5% of iiiTec's Gross Revenue received from
> the rental tickets.[9]

On August 25, 2008, MOC and In-Depth executed a Memorandum of

---

[7] Id. at § 9.6, Docket Entry No. 1-2, p. 13.

[8] Id. at § 9.9, Docket Entry No. 1-2, p. 14.

[9] Id. at § 10.2, Docket Entry No. 1-2, p. 15.

Understanding ("MOU") stating, <u>inter alia</u>, that

> [t]o the extent that [MOC] receives intellectual property
> ownership pursuant to the program and licenses such
> intellectual property to In-Depth, In-Depth will promptly
> sub-license such intellectual property to Petrowell and
> iiiTec on the same basis as In-Depth currently licenses
> RFID technology (including reverse application
> technology) to Petrowell and iiiTec, but without any
> additional royalty or other fee.[10]

On May 5, 2009, iiiTec and Weatherford Switzerland Trading and

Development GmbH ("Weatherford Switzerland"), a Weatherford

affiliate, entered into a Manufacturing and Distribution Agreement

("MDA"), pursuant to which iiiTec granted Weatherford Switzerland

and its affiliates a sub-license to all of iiiTec's intellectual

property relating to RFID, and Weatherford Switzerland agreed to

pay iiiTec a percentage of all tools sold or rented by Weatherford

Switzerland or its affiliates to end users.[11]

In 2010 MOC expanded the scope of the technology licensed to

In-Depth by deleting the first sentence of ¶ 1.03 of the License

Agreement with In-Depth, which stated that

> "On Depth Positioning Technology" shall mean technology
> relating to apparatus and static and dynamic methods for
> determining location within a tubular, for example depth
> in a cased well bore, pipeline or the like, using RFID
> technology.  "Patent Rights" and "Proprietary Data"
> define portions of the On Depth Positioning Technology,[12]

---

[10]MOU, Docket Entry No. 94-13, p. 2 ¶ 3.

[11]MDA, §§2.1, 3.1, Docket Entry No. 98-13, pp. 3-4, and 5.

[12]Amended and Restated License Agreement, Docket Entry
No. 98-1, p. 3 ¶ 1.03.

and inserting the following sentence:

> "On Depth Positioning Technology" shall mean: methods, apparatus, assemblies, systems and wells for determining location within a tubular, for example depth in a cased well bore, pipeline or the like, using RFID technology; assemblies and processes for identifying and tracking assets; and, methods and systems for performing operations in a well, for example perforating operations, including transportation of an identification device, for example RFID, in a well.[13]

In early 2013 Plaintiff paid MOC $ 290,801.24 explaining that

> [a]fter last year's transactions with Weatherford, Inc., we are now in a position to settle the Royalties due on the iiiTec RFID business.
>
> The royalties are derived wholly from the [MDA] between iiiTec and Weatherford Inc. . .
>
> Under the [TDA] iiiTec is due to pay [MOC] at a rate of 17.5%. This amounts to $ 290,801.24.[14]

In April 2017, MOC and Weatherford entered into an Intellectual Property Purchase Agreement ("IPPA"), pursuant to which MOC sold all of its "RFID Patents" and "RFID Technology" to Weatherford "subject to any and all rights and licenses granted" by MOC to others pursuant to certain contracts listed in the IPPA,

---

[13]Id. at Addendum No. 2, Docket Entry No. 98-1, p. 30 ¶ 1.

[14]February 1, 2013, Email to MOC's Phil Snider ("Snider") from iiiTec's Stuart Tait ("Tait"), Docket Entry No. 98-4.  See also TDA, § 10.2, Docket Entry No. 1-2, p. 15 ("Drilling Field and Coiled Tubing Field tools that are subsequently added to the Program will have a minimum Technology Development Fee of 4.5% of sales or 17.5% of iiiTec's Gross Revenue received from the rental tickets.").

including the TDA.[15]  The IPPA also "assign[ed], transfer[red], and convey[ed] to [Weatherford] all of [MOC's] rights, interests, and obligations in and under" certain contracts that were "assignable without the consent of a third party."[16]

In early 2017, iiiTec sued Weatherford Switzerland in Harris County District Court, claiming it was owed royalties under the MDA, the lawsuit was removed to this court, and dismissed for violation of the MDA's forum selection clause.[17]

On June 14, 2017, In-Depth sent iiiTec a notice of breach advising iiiTec that it owed $1.3 million in royalties pursuant to the parties' license agreement, and when iiiTec failed to make payment, In-Depth sent another letter terminating the license agreement.[18]  In-Depth then commenced arbitration against iiiTec for breach of contract, and on October 17, 2019, arbitrators entered a final award in favor of In-Depth.[19]

---

[15]IPPA, §§ 2.1-2.2, Docket Entry No. 95-8, pp. 4-5.

[16]Id. at § 2.4, Docket Entry No. 95-8, p. 5, and Exhibit C thereto (listing contracts assigned to Weatherford).

[17]See Civil Action No. 4:18-1191, Docket Entry No. 81.

[18]August 14, 2017, Letter from J. David Cabello to Tait, Thomas Doig ("Doig"), and Kelly Stephens, Docket Entry No. 115-6.

[19]Final Award of Arbitrators, International Center for Dispute Resolution, No. 01-18-0001-5994, Docket Entry No. 115-7.

**B.    Procedural Background**

On September 6, 2019, iiiTec filed this action seeking declaratory judgment that the IPPA does not grant Weatherford rights to any Assigned IP subject to iiiTec's exclusive license (Count I), or, in the alternative, that iiiTec's exclusive license of the Assigned IP under the TDA is valid and binds Weatherford (Count II), damages, specific performance, and injunctive relief for Weatherford's breach of the TDA (Count III), and reasonable and necessary attorneys' fees pursuant to the Federal Declaratory Judgment Act (Count IV).[20]

After iiiTec filed a Second Amended Complaint (Docket Entry No. 77) reasserting the same causes of action, Weatherford moved for summary judgment on all four counts (Docket Entry No. 93), and iiiTec moved for summary judgment on Counts I and II (Docket Entry No. 97).  On December 1, 2020, the court entered a Memorandum and Order (Docket Entry No. 144) denying iiiTec's motion for summary judgment on Counts I and II, and granting Weatherford's motion for summary judgment in limited part, holding that the TDA did not provide iiiTec an express license to Assigned IP,[21] and that MOC is a necessary party with respect to Counts I, II, and III.[22]  The court denied Weatherford's motion for summary judgment on Counts I,

---

[20]Original Complaint, Docket Entry No. 1-6, pp. 10-13.

[21]Memorandum and Order, Docket Entry No. 144, pp. 23-26.

[22]<u>Id.</u> at 47.

II, and III because Weatherford failed to show beyond dispute that iiiTec does not have an implied exclusive license to Assigned IP,[23] and that if iiiTec has an implied exclusive license to Assigned IP, then Weatherford purchased the Assigned IP subject to that license.[24]  The court denied as premature Weatherford's motion for summary judgment on iiiTec's claim for attorney's fees asserted in Count IV.[25]

On December 15, 2020, iiiTec filed its Third Amended Complaint (Docket Entry No. 146), adding MOC and In-Depth as defendants, and reasserting the same causes of action for declaratory judgment that Weatherford does not have rights to any Assigned IP subject to iiiTec's exclusive license (Count I), or, in the alternative, that iiiTec's exclusive license of the Assigned IP is valid and binds Weatherford (Count II), breach of contract regarding the TDA (Count III), and reasonable and necessary attorneys' fees pursuant to the Federal Declaratory Judgment Act (Count IV).[26]

During a hearing held on December 17, 2020, the court informed iiiTec that it had the burden of showing the existence and terms of

---

[23]Id. at 13-18.

[24]Id. at 37-39, and 43 ("genuine questions of material fact exist regarding whether iiiTec was granted a license to the Assigned IP and whether Weatherford owns the Assigned IP subject to iiiTec's rights").

[25]Id. at 47.

[26]Third Amended Complaint, Docket Entry No. 146, pp. 36-44.

its alleged implied exclusive license,[27] and ordered iiiTec to submit an opening letter brief "in support of the creation and terms of an implied license."[28]  The court ordered Defendants to file their own letter brief in support of their argument that no implied license exists, to which iiiTec could reply.[29] On February 8, 2021, iiiTec filed a "letter brief in support of the creation and terms of an implied license in favor of iiiTec" ("Plaintiff's Letter Brief") (Docket Entry No. 160).  On February 15, 2021, Defendants filed their own letter brief and exhibits ("Defendants' Letter Brief") (Docket Entry No. 161) arguing that "iiiTec cannot meet its burden to prove that it has, or ever had, an implied exclusive license to the Assigned IP,"[30] and that "iiiTec has no exclusive implied license to Assigned IP from Marathon as a matter of law and the Court should dismiss iiiTec's claims."[31]

On February 23, 2021, iiiTec filed a Reply Letter Brief "in Support of its Letter Brief regarding the creation and terms of an implied license in favor of iiiTec" ("Plaintiff's Reply Letter Brief") (Docket Entry No. 168).

---

[27]Transcript of Pretrial Conference, Docket Entry No. 152, pp. 29:1-31:13.

[28]Telephone Hearing Minutes and Order, Docket Entry No. 150.

[29]Id.  See also Transcript of Pretrial Conference, Docket Entry No. 152, p. 31:6-8.

[30]Defendants' Letter Brief, Docket Entry No. 161, p. 1.

[31]Id. at 19 ¶ 5.

On February 25, 2021, the court held a hearing on the letter briefs at which the parties were allowed to present oral argument.[32] At the beginning of the hearing the court informed the parties that "this case is getting transferred to another judge,"[33] and at the end of the hearing the court stated:

> I have indulged the parties on this and, frankly, my own curiosity, and I've expressed some views informally. And the new judge can say: Forget it; or can say: Yes, I get it with what she said. And then key-off of that. But they will have to write something.[34]

On March 4, 2021, the case was reassigned to the undersigned judge pursuant to Special Order No. 2021-10 (Docket Entry No. 175).

Considering Defendants' letter brief as a renewed motion for summary judgment in which Defendants argued that iiiTec is unable to cite evidence capable of establishing that it possesses an implied exclusive license to any Assigned IP,[35] and considering the February 25, 2021, hearing as oral argument for and against Defendants' renewed motion for summary judgment, on June 25, 2021, the court issued a Memorandum Opinion and Order (Docket Entry No. 179) granting Defendants summary judgment, and a Final Judgment (Docket Entry No. 180) (collectively "June 25, 2021, Order and Judgment") dismissing this action with prejudice.

---

[32]Oral Argument, Docket Entry No. 182.

[33]Id. at 4:9-19.

[34]Id. at 61:1-5.

[35]Defendants' Letter Brief, Docket Entry No. 161, p. 1 ("iiiTec cannot meet its burden to prove that it has, or ever had, an implied exclusive license to the Assigned IP").

## II. __Plaintiff's Motion for Leave to File Reply__

Because iiiTec missed the deadline of November 30, 2021, for filing its Reply in Support of Plaintiff's Motion to Reconsider, iiiTec filed the pending Motion for Leave to File Reply on December 3, 2021, attached to which is the reply it seeks leave to file.[36] Acknowledging that Defendants filed their Response on November 23, 2021, the Tuesday before Thanksgiving, and that under "Local Rule 7.4.E, iiiTec's reply would have been due 7 days later on Tuesday, November 30, 2021,"[37] iiiTec explains that its

> counsel's offices were closed for two of those days for the Thanksgiving holiday, on November 25-26, 2021[,] and its counsel assigned to brief this matter was also traveling on vacation over Thanksgiving Week. This effectively left iiiTec's counsel with only 2 business days (Monday and Tuesday) to review, analyze, and craft a reply to Defendants' response before the due date. iiiTec's counsel also had other deadlines and matters which it was required to attend to but undertook to review and draft a short reply to the response as expeditiously as possible. iiiTec should not be prejudiced by its counsel's schedule by having its reply arguments rejected based on the tight time-frame created by travel and the Thanksgiving Holiday. Especially since certain arguments in reply are responses to entirely new arguments made by Defendants — such as the argument that the Rule 59(e) [motion] is now untimely even though it was timely filed and then the Court ordered that it be shortened and refiled.[38]

Defendants respond that iiiTec not only fails to cite or

---

[36]Plaintiff's Reply in Support of Motion to Reconsider Memorandum Opinion and Order and Final Judgment and/or Motion for New Trial or to Modify the Judgment (Doc. 192) ("Plaintiff's Reply in Support of Reconsideration"), Docket Entry No. 196-1.

[37]Plaintiff's Motion for Leave to File Reply, Docket Entry No. 196, p. 1.

[38]__Id.__ at 1-2.

analyze the standard for granting the relief it seeks, but also fails to provide any valid reason for not timely filing its reply. Defendants also argue that granting iiiTec's motion will prejudice them because the reply that iiiTec seeks leave to file contains new arguments, which Defendants would need to address in a surreply, that would delay resolution not only of this case, but also of litigation between the parties in Scotland.[39]

Rule 6(b) governs the court's discretion to extend the time for filing when a deadline has passed.  Rule 6(b)(1) provides that the court may, for good cause, extend the time "on motion made after the time has expired if the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b)(1).  "The determination of 'what sorts of neglect will be considered "excusable" . . . is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'"  <u>Texas Department of Housing and Community Affairs v. Verex Assurance, Inc.</u>, 158 F.3d 585, 1998 WL 648608, at *2 (5th Cir. Sept. 11, 1998) (per curiam) (unpublished) (quoting <u>Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership</u>, 113 S. Ct. 1489, 1498 (1993)).  In determining whether there has been excusable neglect, courts consider the following nonexclusive factors: (1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the

---

[39]Defendants' Response to Plaintiff's Motion for Leave to Late File Reply, Docket Entry No. 197.

delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. Pioneer, 113 S. Ct. at 1493 and 1498.  See also Adams v. Travelers Indemnity Company of Connecticut, 465 F.3d 156, 161 n. 8 (5th Cir. 2006) (same).

Although weak, iiiTec's explanations for delay are candid, and the excusable neglect factors favor iiiTec.  Defendants' primary argument for prejudice is that iiiTec's reply introduces new arguments that will necessitate the filing of a sur-reply, delay resolution of this case, and possibly delay ongoing litigation in Scotland.  As Defendants observe, "a reply brief 'is not the appropriate vehicle for presenting new arguments or legal theories to the court.'"[40]  See Petty v. Portofino Council of Coowners, Inc., 702 F.Supp.2d 721, 729 n. 3 (S.D. Tex. 2010) ("the scope of the reply brief must be limited to addressing the arguments raised by the response") (citations omitted).  Granting iiiTec's motion will not cause appreciable delay in disposition of this case as the reply was only three days late, and will not delay the court's resolution of the pending Motion to Reconsider, but will insure that iiiTec has had the opportunity to present all of its arguments and evidence.  Moreover, as this is not a circumstance where iiiTec failed to act for a lengthy period of time, the court concludes

---

[40]Id. at 8 (quoting AAR, Inc. v. Nunez, 408 F. App'x 828, 830 (5th Cir. 2011) (per curiam) (unpublished) ("a reply brief is limited to addressing matters presented by appellant's opening brief and by appellee's response brief").

that iiiTec is litigating in good faith.  In sum, considering all the relevant circumstances surrounding iiiTec's late filing, the court concludes that the interests of justice favor granting iiiTec's Motion for Leave to File Reply.

### III. **Plaintiff's Motion to Reconsider**

Citing Federal Rules of Civil Procedure 59(e), 60(a), and 60(b), Plaintiff asks the court to "reconsider and repeal its June 25, 2021, Memorandum Opinion and Order and Final Judgment. Alternatively, Plaintiff moves for new trial pursuant to Rule 59(a) or to modify or reform the Judgment."[41]  Defendants oppose Plaintiff's Motion to Reconsider arguing that Plaintiff is not entitled to relief under Rule 59 or Rule 60.[42]

### A.    Standards of Review

iiiTec cites Federal Rules of Civil Procedure 59(a) and (e), and 60(a) and (b)(6) in support of its Motion to Reconsider, but does not address the standard of review the court should apply with respect to any of these rules or how those standards apply to any of its arguments.

---

[41]Plaintiff's Motion to Reconsider, Docket Entry No. 192, p. 1.

[42]Defendants' Response to Plaintiff's Motion to Reconsider Memorandum Opinion and Order and Final Judgment and/or Motion for New Trial or to Modify the Judgment, ("Defendants' Response"), Docket Entry No. 195.

1. <u>Rule 59(a) Does Not Apply to iiiTec's Motion</u>

Rule 59(a) allows a district court to order a new trial only "after a jury trial" or "after a nonjury trial." Fed. R. of Civ. P. 59(a)(1)(A)-(B). Because the court granted summary judgment on Plaintiff's claims, Rule 59(a) does not apply to iiiTec's arguments. <u>See</u> <u>Piazza's Seafood World, LLC v. Odom</u>, 448 F.3d 744, 748 n. 9 (5th Cir. 2006) ("The district court correctly characterized and analyzed the [plaintiff's] Rule 59(a) motion for new trial as a Rule 59(e) motion to reconsider entry of summary judgment."); <u>United States v. $16,540 in U.S. Currency</u>, 273 F.3d 1094, 2001 WL 1085106, at *2 (5th Cir. 2001) (per curiam) ("Because there was no trial, [the petitioner's] motion for a 'new trial' following summary judgment was inappropriate[] . . . the motion should have been construed as a motion for reconsideration pursuant to Rule 59(e).").

2. <u>Rule 60(a) Does Not Apply to iiiTec's Motion</u>

Under Rule 60(a) the court may correct errors, created by clerical mistakes, oversights, or omissions, "that cause the record or judgment to fail to reflect what was intended at the time trial." <u>Warner v. City of Bay St. Louis</u>, 526 F.2d 1211, 1212 (5th Cir. 1976) (citing Fed. R. Civ. P. 60(a)). The Fifth Circuit has repeatedly held that Rule 60(a) does not provide a basis for relief when the errors at issue are substantive, not clerical. <u>Id.</u>

16

("[E]rrors that affect substantial rights of the parties are outside the scope of Rule 60(a). . . Such errors may be corrected under Rule 69(b)."). For example, in <u>Warner</u> the Fifth Circuit concluded that Rule 60(a) did not apply when the district court entered an incorrect interest rate because "there [wa]s no allegation that this error [wa]s a typographical or transcribing mistake, or the mistake was an inadvertent one." <u>Id.</u> And in <u>Britt v. Whitmire</u>, the Fifth Circuit concluded that Rule 60(a) did not apply when the district court purported to rule on a partial summary judgment motion rather than a summary judgment motion to resolve all claims because altering the judgment required "more than a mere correction of a clerical error by the district court" and "would clearly affect[] substantial rights of the parties." 956 F.2d 509, 515 (5th Cir. 1992). Likewise, in <u>Jones v. Anderson-Tully Co.</u>, the Fifth Circuit denied Rule 60(a) relief when the district court incorrectly described the boundary line of a plot of land because "[t]he mistake . . . affect[ed] the substantive rights of the parties . . . [and] [wa]s not clerical." 722 F.2d 211, 212 (5th Cir. 1984) (per curiam). Although iiiTec argues that the June 25, 2021, Order and Judgment contain clerical errors because they dismiss iiiTec's claims with prejudice,[43] for the reasons explained in <u>Warner</u>, <u>Britt</u>, and <u>Jones</u>, Rule 60(a) does not apply to the

---

[43]Plaintiff's Motion to Reconsider, Docket Entry No. 192, p. 24.

arguments made in Plaintiff's Motion to Reconsider because the correction iiiTec seeks would affect the parties' substantive rights.  <u>See</u> <u>Gilmore-Webster v. Bayou City Homebuyers, Inc.</u>, 845 F. App'x 329, 333-34 (5th Cir. 2021) (per curiam).

### 3.   <u>Rule 59(e) — Not 60(b)(6) — Applies to iiiTec's Motion</u>

"[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration," <u>St. Paul Mercury Insurance Company v. Fair Grounds Corporation</u>, 123 F.3d 336, 339 (5th Cir. 1997).  In this circuit

> [a] motion asking the court to reconsider a prior ruling is evaluated either as a motion to "alter or amend a judgment" under Rule 59(e) or as a motion for "relief from a final judgment, order, or proceeding" under Rule 60(b).  The rule under which the motion is considered is based on when the motion was filed. <u>Texas A&M Research Foundation v. Magna Transportation, Inc.</u>, 338 F.3d 394, 400 (5th Cir. 2003). If the motion was filed within twenty-eight days after the entry of the judgment, the motion is treated as though it was filed under Rule 59, and if it was filed outside of that time, it is analyzed under Rule 60.

<u>Demahy v. Schwarz Pharma, Inc.</u>, 702 F.3d 177, 182 n.2 (5th Cir. 2012) (per curiam), <u>cert. denied</u>, 134 S. Ct. 57 (2013).

The Order and Judgment from which Plaintiff seeks relief are dated June 25, 2021.  Twenty-eight days later on July 23, 2021, iiiTec filed an Opposed Motion for Leave to Exceed Page Limit (Docket Entry No. 183), to which was attached a 53-page document titled "Plaintiff's Motion to Reconsider its Memorandum Opinion and Order and Final Judgment and/or Motion for New Trial" (Docket Entry

No. 183-1).   On July 28, 2021, Defendants filed a response in opposition to Plaintiff's Opposed Motion for Leave to Exceed Page Limit and a Motion to Strike Plaintiff's Motion to Alter, Amend, or Reform Judgment (Docket Entry No. 187).   By Order entered on October 4, 2021, the court denied Plaintiff's Motion for Leave to Exceed Page Limit and granted Defendants' Motion to Strike Plaintiff's Motion to Alter, Amend, or Reform Judgment, and ordered iiiTec "to file one motion of no more than twenty-five pages" within forty-five days.[44]   On November 2, 2021, iiiTec filed the pending Motion to Reconsider.

Asserting that extensions of time for filing Rule 59(e) motions are expressly prohibited by Federal Rule of Civil Procedure 6(b)(2), Defendants argue that iiiTec's Motion to Reconsider must be considered under Rule 60(b)(6) — not Rule 59(e) — because iiiTec filed the pending Motion to Reconsider on November 2, 2021, more than twenty-eight days after entry of the June 25, 2021, Order and Judgment, and "[t]he Court did not, and could not, extend iiiTec's deadline to file a Rule 59 motion."[45]

On July 23, 2021, the twenty-eighth day after the court entered the June 25, 2021, Order and Judgment, iiiTec filed both a motion for leave to exceed the court's page limit and a motion to reconsider.   The court denied iiiTec's motion to exceed the page

---

[44]Order, Docket Entry No. 191, p. 4.

[45]Defendants' Response, Docket Entry No. 195, p. 24.

19

limit, struck the accompanying motion to reconsider for failure to comply with the court's 25-page limit, and ordered iiiTec to refile its motion in a form that complied with the court's page limits. iiiTec did not seek leave to file an out-of-time Rule 59(e), and the court's order directing iiiTec to refile its motion to reconsider in a form that complies with the court's page limits did not extend the time for filing a Rule 59(e) motion in violation of Rule 6(b)(2). Because iiiTec filed its Motion to Reconsider on the twenty-eighth day after entry of the Order and Judgment at issue, the court concludes that the appropriate standard of review is that provided by Rule 59(e) — not Rule 60(b)(6). See Greer v. Works, Civil Action No. 4:01CV232Y, 2003 WL 21294710, at *1 n. 1 (N.D. Tex. June 2, 2003) ("The Court will deem the April 28 amended motion as timely under Rule 59(e), since Greer timely filed the original Rule 59(e) motion."), aff'd sub nom Greer v. Litscher, 211 F. App'x 238 (5th Cir. 2004) (per curiam). Alternatively, regardless of whether iiiTec's motion is reviewed under Rule 59(e) or Rule 60(b)(6), the court concludes that iiiTec has failed to establish entitlement to relief.

> (a)  Rule 59(e) Standard of Review

"Rule 59(e) serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."  Templet v. HydroChem, Inc., 367 F.3d 473,

479 (5th Cir.), <u>cert. denied sub nom.</u> <u>Irvin v. Hydrochem, Inc.</u>, 125 S. Ct. 411 (2004).  A manifest error of law is an error "that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'" <u>Guy v. Crown Equipment Corp.</u>, 394 F.3d 320, 325 (5th Cir. 2004) (quoting <u>Venegas-Hernandez v. Sonolux Records</u>, 370 F.3d 183, 195 (1st Cir. 2004) (quoting <u>Black's Law Dictionary</u> 563 (7th ed. 1999)).  A manifest error of fact "is an obvious mistake or departure from the truth." <u>Bank One, Texas, N.A. v. Federal Deposit Insurance Corp.</u>, 16 F.Supp.2d 698, 713 (N.D. Tex. 1998).  Rule 59(e) "gives a district court the chance 'to rectify its own mistakes in the period immediately following' its decision." <u>Banister v. Davis</u>, 140 S. Ct. 1698, 1703 (2020) (quoting <u>White v. New Hampshire Department of Employment Security</u>, 102 S. Ct. 1162, 1166 (1982)).  To prevail on a Rule 59(e) motion, the movant must show either: (1) a manifest error of law or fact; (2) an intervening change in controlling law; or (3) the availability of new evidence not previously available. <u>See Schiller v. Physicians Resource Group, Inc.</u>, 342 F.3d 563, 567 (5th Cir. 2003).  "A Rule 59(e) motion 'calls into question the correctness of a judgment'" and "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." <u>Templet</u>, 367 F.3d at 478-79.  Relief under Rule 59(e) is an "extraordinary remedy that should be used sparingly." <u>Id.</u> at 479.

Courts considering motions to reconsider are duty-bound to "strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." Edward H. Bohlin Co., Inc. v. Banning Co., Inc., 6 F.3d 350, 355 (5th Cir. 1993). When additional evidence not part of the summary judgment record is submitted in support of a motion for reconsideration, courts consider

> among other things, the reasons for the moving party's default, the importance of the omitted evidence to the moving party's case, whether the evidence was available . . . before [the party] responded to the summary judgment motion, and the likelihood that the nonmoving party will suffer unfair prejudice if the case is reopened.

Lavespere v. Niagara Machine & Tool Works, Inc., 910 F.2d 167, 174 (5th Cir. 1990), abrogated on other grounds by Little v. Liquid Air Corp., 37 F.3d 1069, 1075 n. 14 (5th Cir. 1994)(en banc). "[A]n unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration." Templet, 367 F.3d at 479.


    (b)   Rule 60(b)(6) Standard of Review

Rule 60(b) allows a district court to "relieve a party . . . from a final judgment" for any one of six enumerated reasons:

    (1)   mistake, inadvertence, surprise, or excusable neglect;

    (2)   newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3)   fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4)   the judgment is void;

(5)   the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6)   any other reason that justifies relief.

Fed. R. Civ. P. 60(b).   The Fifth Circuit has described Rule 60(b)(6) as a "grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the [five] preceding clauses," and when "'extraordinary circumstances' are present." Batts v. Tow-Motor Forklift Co., 66 F.3d 743, 747 (5th Cir. 1995), cert. denied, 116 S. Ct. 1851 (1996). See also Webb v. Davis, 940 F.3d 892, 899 (5th Cir. 2019)(per curiam) ("Rule 60(b)(6) is a catchall provision that allows for the granting of relief from a judgment for 'any . . . reason that justifies relief' other than those reasons listed in Rule 60(b)(1)-(5)."). The extraordinary relief afforded by "Rule 60(b) requires a showing of manifest injustice and will not be used to relieve a party from the free, calculated, and deliberate choices he has made." Rogers v. Boatright, 670 F. App'x 386, 387 (5th Cir. 2016) (per curiam) (quoting Yesh Music v. Lakewood Church, 727 F.3d 356, 363 (5th Cir. 2013)). See also Carter v. Fenner, 136 F.3d 1000, 1007 (5th Cir.), cert. denied, 119 S. Ct. 591 (1998) ("[R]elief under rule 60(b) is considered an extraordinary remedy, this court has held that the rule should be construed in order to do substantial justice.").

**B.   Analysis**

Plaintiff argues that the court should reconsider and modify its June 25, 2021 Order and Judgment because (1) "[t]he Order and Judgment were entered without notice to iiiTec that a motion for summary judgment was pending," and without giving iiiTec an "opportunity to respond as allowed by Rules 6 and 56;"[46] (2) "[t]he Order and Judgment also reflect an omission and/or a misunderstanding of the facts, misapplication of the agreements and law, and weighing the evidence without ever giving iiiTec a chance to correct or address the court's concerns;"[47] and (3) "[t]he Order and Judgment inexplicably dispose of all claims, even those that are pled in the alternative to iiiTec's alleged implied license."[48]

1.   <u>iiiTec Has Failed to Show that the Order and Judgment were Entered Without Authority or Without Giving iiiTec Notice or Opportunity to Respond</u>

Asserting that "[a] court cannot enter a <u>sua sponte</u> summary judgment without a motion pending, unless it first gives the party notice of the motion 'and a reasonable time to respond,'"[49] and that "the Court previously represented to the parties that the letters

---

[46]Plaintiff's Motion to Reconsider, Docket Entry No. 192, p. 4.  <u>See also</u> <u>id.</u> at 10-12.

[47]<u>Id.</u> at 4.  <u>See also</u> <u>id.</u> at 12-23.

[48]<u>Id.</u> at 5.  <u>See also</u> <u>id.</u> at 23-24.

[49]<u>Id.</u> at 10.

were not being considered as motions for summary judgment,"[50] iiiTec argues that it "was served with the Order and Judgment without any notice from the Court and without being given the required 'reasonable time to respond.'"[51] iiiTec explains that

> [u]sing Weatherford's letter, filed on February 15, 2021, as a summary judgment motion, iiiTec's "Reply" was due (by prior order) on February 23, 2021, less than ten days after the "Motion." The hearing on the letter briefs was held on February 25, 2021, only ten days after the "Motion". Considering the February 15, 2021[,] letter as a motion for summary judgment, iiiTec was given less than the ten days required by Rule 6 to respond.
>
> iiiTec was not afforded a chance to fully brief the law and facts. The lack of notice and lack of time to respond are clear violations of the notice procedures and led to improper disposition of iiiTec's claims without affording iiiTec due process.[52]

Asserting that "[t]here is no authority cited which allows a change in judges as the sole reason to overrule a prior order,"[53] iiiTec argues that "[i]n addition to failing to analyze or discuss any circumstance which shows that 'justice requires' changing the prior ruling, the Court did not provide iiiTec the required notice and an opportunity to respond before the Court revised its ruling."[54] The

---

[50] Id. at 10.

[51] Id.

[52] Id. at 10-11.

[53] Id. at 11-12.

[54] Id. at 12. See also Plaintiff's Reply, Docket Entry No. 196-1, p. 1 (arguing that "iiiTec agreed to a shortened schedule for letter briefs, not a motion for summary judgment;
(continued...)

court is not persuaded by these arguments because § III.B.1 of the
June 25, 2021, Memorandum Opinion and Order addresses the court's
authority to act,[55] and because iiiTec's arguments omit and ignore
the procedural history of this case.

(a)   iiiTec Received Notice and Opportunity to Respond

On December 1, 2020, the court entered a Memorandum and Order
("December 1, 2020, Memorandum and Order") (Docket Entry No. 144)
denying Plaintiff's motion for summary judgment on Counts I and II,
and granting Weatherford's motion for summary judgment in limited
part.   In pertinent part the court held that the TDA did not
provide iiiTec an express license to Assigned IP,[56] that MOC is a
necessary party with respect to Counts I, II, and III,[57] that
Weatherford was not entitled to summary judgment on Counts I, II,
and III because Weatherford failed to show beyond dispute that
iiiTec does not have an implied exclusive license to Assigned IP,[58]

---

[54](...continued)
and the agreement was not without objection," and p. 2 (arguing
that "The Order in issue (Doc. 179) contradicts [] the court's
prior summary judgment order (Doc. 144) and statements, without
explanation").

[55]Memorandum Opinion and Order, Docket Entry No. 179,
pp. 18-20.

[56]Memorandum and Order, Docket Entry No. 144, pp. 23-26.

[57]Id. at 47.

[58]Id. at 13-18.

26

and that if iiiTec has an implied exclusive license to Assigned IP,
then Weatherford purchased the Assigned IP subject to iiiTec's
implied license.[59]

On December 17, 2020, the court conducted a hearing during
which Defendants asserted that

> there is one core issue that we should take up, we
> believe, over the next 60 days or so, get a motion for
> summary judgment on file by or before March 31 that we
> think will resolve the case.
>
> And the issue is this, Your Honor, [it] is the issue
> of the implied license. Going back and looking at the
> pleadings in this case up and to the second amended
> complaint there were no allegations on implied license.
> Implied license was not briefed by the parties in either
> motion for summary judgment. Clearly it's in Your
> Honor's order and we appreciate that. And we think, you
> know, we could knock that issue out on a schedule like
> you gave us for this last bit[] of the case, . . . get
> discovery done on that issue, get the briefing done on
> that issue, present it to the Court by no later than the
> end of March understanding that if indeed we prove, and
> we definitely believe we're going to prove[, that] there
> was no implied license, this case is over.[60]
>
> . . .
>
> . . . Your Honor, from our perspective it only makes
> sense that we take this one last bite, it's on the
> implied license as set forth in the Court's order
> regarding [MOC]'s conduct, get the discovery done on that
> and get it briefed, short, sweet, efficient, allow the
> Court to make a ruling on that, and we believe that's
> likely, highly likely to end this case and that's what we

---

[59]Id. at 37-39, and 43 ("genuine questions of material fact
exist regarding whether [Plaintiff] was granted a license to the
Assigned IP and whether Weatherford owns the Assigned IP subject
to [Plaintiff's] rights").

[60]Transcript of Pretrial Conference, Docket Entry No. 152,
pp. 8:15-9:9.

would ask to do on behalf of Weatherford.[61]

iiiTec responded that from its

perspective the prior order on summary judgment is pretty clear and I think implied license would be an issue of fact anyway, but I think Footnotes 52 and 53 set out, you know, competing evidence which, you know, obviously on summary judgment the Court can't weigh that evidence anyway, so I'm not entirely sure what specifically Mr. Donley thinks, or Weatherford Tech thinks that they'll be able to prove on a fact issue like that in a, you know, 30-day time period in discovery.

But obviously I mean I think it's part of the broader case, it's something that should be presented to the jury . . .[62]

After informing the parties that she would be taking inactive status on March 31, 2021, and, therefore, would not be able to decide another motion for summary judgment,[63] the court instructed the parties to "use these next two months to get a little discovery done with shortened deadlines and then get the parties' positions on whether there's a license of some sort or not.  We've already dealt with the express license of course."[64]  Stating that this time would be spent "to figure out what the implied license is, if it was — and whether it was created,"[65] the court told iiiTec's counsel: "I know you're probably not happy with this, but I think

---

[61]Id. at 9:16-23.

[62]Id. at 10:22-11:7.

[63]Id. at 16:8-17:17.

[64]Id. at 23:24-24:2.

[65]Id. at 25:5-7.

that it will ultimately be a good idea. . . . If there's a fact issue, you go to the rest of World War III.  If there is no fact issue, at least from where I sit you'll find out."[66]

After additional discussion the court and the parties agreed to a schedule for discovery and briefing on the implied license issue.[67]  During that discussion iiiTec agreed to be the first to file a brief in support of the creation and terms of an implied license, and the court set due dates for Defendants to file a brief in support of their argument that no implied license exists, and for iiiTec to file a reply.[68]

On February 8, 2021, iiiTec filed a "letter brief in support of the creation and terms of an implied license in favor of iiiTec" ("Plaintiff's Letter Brief") (Docket Entry No. 160).  On February 15, 2021, Defendants filed a letter brief ("Defendants' Letter Brief") arguing — as they had at the December 17, 2020, hearing — that "iiiTec cannot meet its burden to prove that it has, or ever had, an implied exclusive license to the Assigned IP,"[69] and that "iiiTec has no exclusive implied license to Assigned IP from [MOC]

---

[66]Id. at 25:8-12.

[67]Id. at 25:13-31:13.  See also Telephone Hearing Minutes and Order, Docket Entry No. 150.

[68]Id. at 30:24-31:8.  See also Telephone Hearing Minutes and Order, Docket Entry No. 150.

[69]Defendants' Letter Brief, Docket Entry No. 161, p. 1.

as a matter of law and the Court should dismiss iiiTec's claims."[70]
On February 18, 2021, iiiTec requested an extension of time to file
its reply brief because of inclement weather (Docket Entry
No. 165).  The court granted iiiTec's request and postponed the
hearing to February 25, 2021 (Docket Entry No. 166).  On February
23, 2021, iiiTec filed a Reply Letter Brief "in Support of its
Letter Brief regarding the creation and terms of an implied license
in favor of iiiTec" ("Plaintiff's Reply Letter Brief") (Docket
Entry No. 168).

On February 25, 2021, the court held a hearing "because
Weatherford contends that the issue of implied license would end
this case if the Court rules in its favor."[71]

On March 4, 2021, the case was reassigned to the undersigned
judge pursuant to Special Order No. 2021-10 (Docket Entry No. 175).

The procedural history of this case shows that iiiTec was not
only placed on notice that Defendants sought summary judgment on
the implied license issue during the December 17, 2020, hearing,
but that on that date iiiTec agreed to the schedule pursuant to
which it would file an opening brief in support of the creation and
terms of an implied license by February 8, 2021, Defendants would
respond by February 15, 2021, iiiTec would file a reply by February
19, 2021, and the court would conduct a hearing at which the

---

[70]Id. at 19 ¶ 5.

[71]Oral Argument, Docket Entry No. 182, p. 3:4-6.

parties could present oral argument.[72]  iiiTec's argument that it
lacked notice and opportunity to respond to Defendants' request for
summary judgment on the implied license issue fails to mention not
only the December 17, 2020, hearing at which Defendants argued the
implied license issue could resolve the entire case, but also its
own agreement to file an opening brief in support of the creation
and terms of an implied license by February 8, 2021.  Nor does
iiiTec cite any authority requiring the court to have notified the
parties before issuing the June 25, 2021, Order and Judgment.

iiiTec does not argue that the court's failure to provide
notice of its intent to resolve the implied license issue
prejudiced it, or cite evidence or arguments that it would have
raised had it received notice of the court's intent to rule.
Absent argument or evidence that the court's failure to notify
iiiTec of its intent to rule prevented iiiTec from presenting all
of its summary judgment evidence on the implied license issue, any
error is harmless.  See Nowlin v. Resolution Trust Corp., 33 F.3d
498, 504 (5th Cir. 1994) (quoting Leatherman v. Tarrant County
Narcotics Intelligence & Coordination Unit, 28 F.3d 1388, 1398 (5th
Cir. 1994) ("When there is no notice to the nonmovant, summary
judgment will be considered harmless if the nonmovant has no
additional evidence or if all of the nonmovant's evidence is

---

[72]Transcript of Pretrial Conference, Docket Entry No. 152,
pp. 30:24-31:8.  See also Telephone Hearing Minutes and Order,
Docket Entry No. 150.

reviewed by the appellate court and none of the evidence presents a genuine issue of material fact.")).  Accordingly, the court is not persuaded that iiiTec was served with the June 25, 2021, Order and Judgment without being given notice or opportunity to respond to Defendants' arguments.  Nor is the court persuaded that iiiTec's contention that it lacked notice and opportunity to respond constitutes manifest error of law or fact entitling iiiTec to relief under Rule 59(e), or extraordinary circumstances entitling iiiTec to relief under Rule 60(b)(6).

> (b)  The Order and Judgment Did Not Change a Prior Ruling Without Showing that Justice so Requires

iiiTec's arguments that the court failed to cite authority that allows a change in judges as the sole reason to overrule a prior order, and that the court failed to analyze or discuss any circumstance showing that justice required changing the prior judge's ruling that the implied license issue was a fact issue for trial,[73] omit and ignore the procedural history of this case.

The holdings in the December 1, 2020, Memorandum and Order that Weatherford was not entitled to summary judgment on Counts I, II, and III because Weatherford failed to show beyond dispute that

---

[73]Plaintiff's Motion to Reconsider, Docket Entry No. 192, pp. 11-12.  See also Plaintiff's Reply, Docket Entry No. 196-1, pp. 1-2.

iiiTec does not have an implied exclusive license to Assigned IP,[74] and that if iiiTec has an implied exclusive license to Assigned IP, Weatherford purchased the Assigned IP subject to that license,[75] were necessarily based on evidence and arguments made at that time. When at the December 17, 2020, hearing Defendants argued that the implied license issue was a core issue, which if taken up on a expedited basis could resolve the entire case, iiiTec responded that the implied license issue was one that the court had already decided was a fact issue for the jury.[76]  Unpersuaded by iiiTec's response, the court ordered the parties to undertake discovery and submit briefs limited to the implied license issue on an expedited basis.  The court also scheduled a hearing for February 24, 2021, at which the parties could present oral argument on the implied license issue.[77]  At iiiTec's request the briefing schedule and hearing date were both extended.[78]

---

[74]Memorandum and Order, Docket Entry No. 144, pp. 13-18.

[75]Id. at 37-39, and 43 ("genuine questions of material fact exist regarding whether [Plaintiff] was granted a license to the Assigned IP and whether Weatherford owns the Assigned IP subject to [Plaintiff's] rights").

[76]Transcript of Pretrial Conference, Docket Entry No. 152, pp. 8:15-11:7.

[77]Id. at 29:1-31:15.  See also Telephone Hearing Minutes and Order, Docket Entry No. 150.

[78]See Email from iiiTec's counsel requesting extension due to inclement weather (Docket Entry No. 165); and Order granting iiiTec's request (Docket Entry No. 166).

At the beginning of the February 25, 2021, hearing the court reminded the parties that "this case is getting transferred to another judge."[79]  Asserting that "it's a Weatherford motion, and I would ordinarily let Weatherford go first,"[80] the court nevertheless said that

> I'm going to let iiiTech make a brief statement, and the statement needs to address what it thinks the Court should rely on to find whether or not there is an implied license and, frankly, what it contains or what it includes, and when it arose.  And I need to get your basic theory out here, then I'll listen to Weatherford, and then iiiTech will get a chance to respond.[81]

At the end of the hearing the court told the parties

> I'm just going to give you some feedback.  This isn't a formal ruling.  You're never going to make a motion in front of me, but I assume you're going to make a motion in front of other people.  So this is feedback to you-all for whatever you want to use it for. . .
>
> There is no question in [my] mind that there needs to be evidence presented to define an implied contract. And while I have not read the cases that the defense Weatherford cites, the authorities that I'm familiar with make it clear that an implied contract is still a contract.  And so, there needs to be definition of the contract, and the elements need to be met.
>
> . . .
>
> I am not seeing [ii]iTech's meeting its burden of establishing the material terms of the implied license. This is not a case where the issue is, is it March or is it April?  This is a case where there are a span of many years, multiple years.  And I'm just not seeing enough

---

[79]Oral Argument, Docket Entry No. 182, p. 4:9-19.

[80]Id. at 5:10-11.

[81]Id. at 5:12-19.

definiteness to the contract that is claimed by iiiTech
to have been implied to rise [to] the level of a
contract.

        If there was a failure by [MOC] to actually
implement the license that it said it intended to
provide, there may be a failure of contract, . . . .
There's no question that Marathon had the ability to
transfer the license to In-Depth, and it did so.

        The concept of an implied license or implied
contract, which is really what's in issue, is at least
based on the limited evaluation I've done, simply does
not meet the requirements that would need to be proved by
iiiTech to establish a contract/license that could meet
the legal requirement.

        I'm not — I'm honestly not understanding the
arguments by iiiTech about meeting of the minds, or the
duration. . .

        There is no question [MOC] licensed to In-Depth the
assigned IP in 2010.  What happened before that, I don't
really know.

        I have definitely not in the past . . . resolved the
implied license issue, and I think iiiTech and everyone
else agrees that I said that there was a fact question as
to whether or not there was an implied license.  And so,
I view the exercise through these letters to be an effort
to flesh that issue out.

                            . . .

        So this is not a ruling — . . . but, honestly, I'm
just not — I'm just not seeing an implied contract.

        So my — that's my reaction.  It's not an official
ruling.  As I've said, I don't have the benefit of having
read all of the parties' cases from particularly those
that have been set forth today, but I think the parties
wanted some feedback, and that's what I've given them.

        I guess the good news for iiiTech is I'm not going
to be the decider, but the vague efforts to create a
contract or a license I don't think are going to make it.
But, again, that would be something that you can either
decide to make a motion on or to deal with, with your
next assigned judge.

. . .

>       . . . I have indulged the parties on this and, frankly,
>       my own curiosity, and I've expressed some views
>       informally.  And the new judge can say: Forget it; or can
>       say: Yes, I get it with what she said.  And then key-off
>       of that.  But they will have to write something.[82]

iiiTec's arguments that the June 25, 2021, Order and Judgment represent an overruling of the prior judge's holding that the implied license issue presented an issue of fact for trial is not persuasive.  The June 25, 2021, Order and Judgment are not only based on arguments and evidence presented in the briefs filed and the February 25, 2021, hearing, but they comport with the observations made by the court at the close of the February 25, 2021, hearing.  The June 25, 2021, Order and Judgment are this court's written resolution of the summary judgment issue left unresolved when the prior judge took inactive status.  Accordingly, iiiTec's argument that the court's June 25, 2021, Order and Judgment were issued based solely on a change of judge, without analysis or discussion of circumstances showing that justice required changing the prior ruling that the implied license issue was a fact issue for trial, is not persuasive and borders on being frivolous.  See Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 103 S. Ct. 927, 935 (1983) ("every order short of a final decree is subject to reopening at the discretion of the

---

[82]Id. at 56:3-61:5.

36

district judge"); <u>Stoffels ex rel. SBC Telephone Concession Plan v.</u>
<u>SBC Communications, Inc.</u>, 677 F.3d 720, 727-28 (5th Cir.), <u>cert.</u>
<u>denied</u>, 113 S. Ct. 318 (2012) (quoting <u>Zarnow v. City of Witchita</u>
<u>Falls, Texas</u>, 614 F.3d 161, 171 (5th Cir. 2010), <u>cert. denied</u>, 131
S. Ct. 3059 (2011) ("[A] trial court [is] free to reconsider and
reverse [interlocutory orders] for any reason it deems sufficient,
even in the absence of new evidence or an intervening change or in
clarification of the new law.")).  Nor is the court persuaded that
iiiTec's argument that the June 25, 2021, Order and Judgment were
issued based solely on a change of judge, without analysis or
discussion of circumstances showing that justice required changing
the December 1, 2020, ruling constitutes either manifest error of
law or fact entitling iiiTec to relief under Rule 59(e), or
extraordinary circumstances  entitling iiiTec to relief under Rule
60(b)(6).


　　　2.　　<u>iiiTec Has Failed to Show that the Order and Judgment</u>
<u>Reflect an Omission and/or a Misunderstanding of the</u>
<u>Facts, a Misapplication of the Agreements and Law, or a</u>
<u>Weighing of the Evidence that Entitles iiiTec to Relief</u>
<u>under Rule 59(e) or Rule 60(b)(6)</u>

In support of its argument that the June 25, 2021, "Order and
Judgment . . . reflect an omission and/or a misunderstanding of the
facts, misapplication of the agreements and law, and weighing the

evidence,"[83] iiiTec makes the following five assertions: (1) "the Court does not analyze what terms are material for creating a contract;"[84] (2) "iiiTec has sufficient evidence of all material terms of an implied license;"[85] (3) "[t]he supposed deficient terms are not sufficient to defeat the implied license;"[86] (4) "[t]he parties intended iiiTec to hold exclusive rights for drilling and coiled tubing;"[87] and (5) "[t]he TDA Assigned IP rights asserted are not in the In-Depth-iiiTec License."[88]  These assertions all simply restate arguments that iiiTec raised in its February 2021 briefing, and the court rejected in the June 25, 2021, Memorandum Opinion and Order.[89]

---

[83]Plaintiff's Motion to Reconsider, Docket Entry No. 192, p. 4.  See also id. at 12-23.

[84]Id. at 1 and 12.

[85]Id. at 2 and 15.

[86]Id. at 2 and 17.

[87]Id. at 2 and 20.

[88]Id. at 2 and 22.  See also Plaintiff's Reply, Docket Entry No. 196-1, p. 5 (arguing that "it is clearly not true that the Assigned IP is ENTIRELY included in the In-Depth-iiiTec license, because the definitions in the various agreements are NOT the same").

[89]See Memorandum Opinion and Order, Docket Entry No. 179, § III, pp. 10-40, especially § III.A, subtitled, "Applicable Law," at 11-18, and § III.B.2, subtitled, "Plaintiff Has Failed to Cite Evidence Capable of Establishing Either the Existence or Material Terms of an Implied Exclusive License"), pp. 20-38, including subheadings (a) Plaintiff Fails to Cite Evidence Capable of Establishing the Existence of an Implied License, pp. 21-26; (b) Plaintiff Has Failed to Cite Evidence Capable of
(continued...)

Although iiiTec supports its five assertions with some
evidence and caselaw not cited in its February 2021 briefing,
iiiTec fails to argue or show that any of the newly cited evidence,
or all but one of the newly cited cases, were not available in
February of 2021.  Nor does iiiTec argue or show that the only case
it cites that postdates February of 2021, <u>BPX Operating Co. v.
Strickhausen</u>, 629 S.W.3d 189 (Tex. 2021), effected a substantive
change in controlling law that warrants reopening this case.

In <u>Strickhausen</u> the Texas Supreme Court affirmed an appellate
court's finding that a fact issue existed as to whether
Strickhausen, a mineral lessor, had ratified a pooling agreement
that modified an existing contract by accepting royalty payments
calculated on a pooling basis.  <u>Id.</u> at 192.  Stating that
"[w]hether two parties have formed a contract is, of course, a
question of the parties' intent," <u>id.</u> at 196, and that "[l]ikewise,
whether one party has ratified changes to a contract is also a
matter of intent," <u>id.</u>, the court asserted that "parties seeking to
establish implied ratification or ratification by conduct must
point to words or actions that 'clearly evidenc[e] an intention to
ratify.'" <u>Id.</u> at 197-98.  The court explained that

---

<sup>89</sup>(...continued)
Establishing Material Terms of an Implied License, pp. 26-33; and
(c) Plaintiff Has Failed to Cite Evidence Capable of Establishing
that Any Implied License was Exclusive, pp. 34-36.  <u>See also</u>
Defendants' Response, Docket Entry No. 195, pp. 12-21 (cogently
refuting each of iiiTec's five assertions).

> [a] clear showing requirement for implied ratification is
> consistent with the well-established standard for proving
> waiver by conduct.  Ratification and waiver have been
> called "opposite sides of the same coin." . . . Both can
> arise by implication from a party's actions, and both
> involve ascribing unspoken intent to a party and thereby
> altering his legal rights.  It is well-settled that
> '[w]hile waiver may sometimes be established by conduct,
> that conduct must be <u>unequivocally inconsistent</u> with
> claiming a known right." . . . If implied waiver by
> conduct must be established "unequivocally," it stands to
> reason that implied ratification by conduct should be
> subject to a similar requirement.  Thus, as the party
> asserting implied ratification, BPX must show that
> Strickhausen's behavior clearly evidenced an intent to
> ratify the unauthorized pooling.

<u>Id.</u> at 198 (citations omitted).

<u>Strickhausen</u> stands for the well-established principle that whether two parties have formed a contract is a question of intent. To the extent that <u>Strickhausen</u> represents a change in controlling law, that change does not benefit iiiTec because it requires iiiTec, as the party asserting the existence of an implied license, to cite evidence capable of establishing that MOC's conduct unequivocally established an intent to provide iiiTec an implied exclusive license to Assigned IP.  For the reasons stated in §§ III.B.2(a) and (c) of the June 25, 2021, Memorandum Opinion and Order, the court has already concluded that iiiTec failed to cite evidence capable of establishing either the existence of an implied license, or that any implied license was exclusive.[90]

Nevertheless, iiiTec argues that

---

[90]Memorandum Opinion and Order, Docket Entry No. 179, pp. 21-26 and 34-36.

[p]rior to the TDA, [MOC] confirmed its intent for iiiTec to be the exclusive partner in regards to the patent portfolio. Around the time of the TDA, the language used by [MOC] in describing iiiTec changes from simply being a patent licensee to being a "project partner" and/or "exclusive partner" and patent portfolio is replaced with phrases like "RFID technology" and "RFID development." In the TDA, iiiTec is granted rights and obligations exclusively related to drilling and coiled tubing. On the TDA Program, communications, and development documents, drilling tools are repeatedly referred to as being "iiiTec" technology. [MOC] knew of the MDA and that iiiTec understood its agreements with [MOC] allowed iiiTec [to] grant exclusive rights to Weatherford for drilling.

. . .

Like the plaintiff in <u>Strickhausen</u>, [MOC] actually accepted the money paid from iiiTec to [MOC]. Although [MOC] currently contends it never agreed to exclusivity for iiiTec in regards to the drilling field and coiled tubing field, the course of performance over years, like the surface owner cashing the checks in <u>Strickhausen</u>, indicates that [MOC] intended for iiiTec to have exclusivity. Like the surface owner's explanation in <u>Strickhausen</u>, even if the Defendants' explanations are "reasonable" it, at most, creates a fact question as to whether [MOC] granted iiiTec an implied exclusive license by accepting iiiTec's payment and referring to iiiTec as "exclusive" and as its "partner."[91]

iiiTec's argument fails to recognize that as the party asserting the existence of an implied license it bears the burden of proving that existence, and that to survive Defendants' motion for summary judgment, iiiTec must cite evidence of MOC's conduct from which a reasonable fact finder could find that MOC unequivocally intended iiiTec to have an exclusive license to Assigned IP. iiiTec has failed to carry its burden of citing

---

[91]Plaintiff's Motion to Reconsider, Docket Entry No. 192, pp. 20-22 (internal citations to the record omitted).

evidence capable of creating a fact issue for trial because it is undisputed that when MOC engaged in the conduct that iiiTec cites as evidence that MOC intended iiiTec to have an exclusive license to Assigned IP, iiiTec held an express license to MOC's technology from In-Depth, and that iiiTec had a separate, development agreement with MOC, _i.e._, the TDA, which required iiiTec to make the payment that MOC accepted.  It is also undisputed that iiiTec lost its express license to MOC's technology in 2017 due to non-payment.  iiiTec argues that despite having lost its express license to MOC technology due to non-payment, it nevertheless remained licensed to Assigned IP owned by MOC pursuant to an implied exclusive license created by the parties' course of conduct during the time that iiiTec held an express license to MOC's technology from In-Depth.  iiiTec made this argument in its February 2021 briefing, and the court considered and rejected it in the June 25, 2021, Memorandum Opinion and Order.[92]

Although iiiTec cites two cases not previously cited, <u>Harness v. Rossler</u>, <u>No. 08</u>-CV-0988-P, 2009 WL 10704475 (N.D. Tex. March 31, 2009), and <u>Hunn v. Dan Wilson Homes, Inc.</u>, 789 F.3d 573 (5th Cir.), <u>cert. denied</u>, 136 S. Ct. 592 (2015), which iiiTec contends support its argument because they hold that the existence of an express license can speak to the parties' intent to create an implied license, and that the existence of an express license does not

---

[92]Memorandum Opinion and Order, Docket Entry No. 179, p. 38.

preclude an implied license as a matter of law,[93] those cases are distinguishable on their facts because neither involved a plaintiff like iiiTec who lost an express license to the material at issue for non-payment, and then claimed an implied license based on the parties' course of conduct during the time that the express license was in effect. In an effort to work around the court's rejection of its argument, iiiTec attempts to distinguish rights that it held pursuant to the express license from In-Depth, from rights that it held pursuant to the alleged implied exclusive license it claims to have held from MOC.

Asserting that the "Assigned IP rights . . . are not in the In-Depth-iiiTec License,"[94] iiiTec argues that

> [t]here is no evidence that ANY information iiiTec claims was included under the In-Depth-iiiTec License.  For the Court's conclusion to be correct, the Assigned IP would need to be entirely within the definition of Proprietary Data, and the Court has done nothing to analyze whether it is.  [MOC] admits Proprietary Data does not include Assigned IP but merely contends it was their "intent" to include it.  Given the multiple agreements related to the RFID technologies in this time period, granting various parties different rights, such a conclusion, without evidence, is a grave error.   [MOC]'s intent must be decided by the jury.
>
> Plaintiff certainly agrees that there was "a license" from In-Depth to iiiTec but concluding that it covers "all" of [MOC]'s RFID technology [] is conclusory and unsupported.  The ruling is inconsistent with [MOC]'s deposition testimony and evidence in this case.[95]

_____

[93]Plaintiff's Motion to Reconsider, Docket Entry No. 192, p. 14.

[94]Id. at 2 and 22-23.

[95]Id. at 22.  See also Plaintiff's Reply, Docket Entry No.
(continued...)

In support of this argument, iiiTec cites the deposition of MOC technical consultant, Philip Snider ("Snider"), who iiiTec argues "'admits' Proprietary Data does not include Assigned IP but merely contends it was their 'intent' to include it."[96]

iiiTec's citations from the Snider Deposition are not sufficient to raise a fact issue for trial regarding the scope of the license that iiiTec held from In-Depth because that license was not limited to "Proprietary Data," but instead, granted iiiTec "a non-exclusive, indivisible, worldwide sublicense to make, have made, sell, and offer to sell the RFID Reverse Application Drilling Assembly and to sell, offer to sell, and use the RFID Reverse Application Methods."[97]  The License Agreement that iiiTec held from In-Depth expressly defines the terms "RFID Reverse Application Drilling Assembly," and "RFID Reverse Application Methods.   In pertinent part "RFID Reverse Application Drilling Assembly" is defined to mean "technology relating to assemblies and systems for performing an operation during drilling of a well using an RFID to

---

[95](...continued)
196-1, pp. 5-7.

[96]Plaintiff's Motion to Reconsider, Docket Entry No. 192, p. 22 n. 111 (citing Oral and Videotaped Deposition of Philip M. Snider ("Snider Deposition"), 99:2-4, 218:19-221:2, Exhibit 2 to Plaintiff's Motion to Reconsider, Docket Entry No. 193-1, pp. 20, and 32-35).

[97]See License Agreement, § 2.01, Docket Entry No. 115-5, p. 7.

44

actuate a process tool positioned in the well,"[98] and "RFID Reverse Application Methods" is defined to mean "technology relating to methods for performing a process operation in a well using an RFID to actuate a process tool positioned in a well."[99]  Both definitions end with the statement that "'Patent Rights' and 'Proprietary Data' define portions of" the licensed matter.[100]  Because "Proprietary Data" represents only a portion of the MOC technology that In-Depth licensed to iiiTec, Snider's testimony that the "Proprietary Data" referenced in the license did not include Assigned IP is not evidence that the license did not include Assigned IP and therefore is not sufficient to raise a fact issue for trial.

Moreover, since iiiTec's corporate representative, Tait, testified during his deposition that all of the  Assigned IP at issue in this case "relates to assemblies and systems or technologies relating to methods for performing an operation during drilling of a well using an RFID to actuate a process tool,"[101] iiiTec cannot cogently argue that Assigned IP does not fall within the definitions of "RFID Reverse Application Drilling Assembly," and "RFID Reverse Application Methods" contained in the license it held from In-Depth because that argument conflicts with the

---

[98]Id. § 1.03, Docket Entry No. 115-5, p. 3.

[99]Id., § 1.04, Docket Entry No. 115-5, p. 4.

[100]Id., §§ 1.03-1.04, Docket Entry No. 1115-5, pp. 3-4.

[101]Oral and Videotaped Deposition of Stuart Tait, ("Tait Deposition"), pp. 26:8-27:2, Docket Entry No. 162-1, pp. 11-12.

testimony of its own witness.  Any argument that iiiTec may be making or attempting to make that Assigned IP was not licensed from MOC to In-Depth fails for essentially the same reasons.

The scope of the license that iiiTec held from In-Depth covered technology relating to assemblies and systems or methods for performing an operation during drilling of a well using RFID technology, and separate definitions for "Patent Rights" and "Proprietary Data" defined only "portions" of the licensed technology.[102]  In 2010 the scope of the license that MOC granted to In-Depth was amended to include substantially similar language, by revising the first sentence of the definition of the licensed "On Depth Positioning Technology" to state:

> methods, apparatus, assemblies, systems and wells for determining location within a tubular, for example depth in a cased well bore, pipeline or the like, using RFID technology; assemblies and processes for identifying and tracking assets; and, methods and systems for performing operations in a well, . . . including transportation of an identification device, for example RFID, in a well.[103]

The second sentence of the definition remained unchanged stating: "'Patent Rights' and 'Proprietary Data' define portions of the On Depth Positioning Technology."[104]  The conclusion that  the Assigned IP at issue was included in the license that In-Depth held from MOC

---

[102]License Agreement, §§ 1.03-1.04, 201, Docket Entry No. 115-5, pp. 3-4.

[103]Amended and Restated License Agreement Addendum No. 2, ¶ 1, Docket Entry No. 98-1, p. 30.

[104]Amended and Restated License Agreement, §§ 1.03, Docket Entry No. 98-1, p. 3.

was expressed by the court at the oral argument held on February 25, 2021, when the judge stated, "There is no question [MOC] licensed to In-Depth the assigned IP in 2010."[105]

Because the record before the court undisputably shows that the Assigned IP falls within the scope of both the license from MOC to In-Depth and the license from In-Depth to iiiTec, iiiTec's arguments to the contrary are unavailing. iiiTec has therefore failed to show that the June 25, 2021, Order and Judgment reflect an omission and/or a misunderstanding of the facts, a misapplication of the agreements and law, or a weighing of the evidence entitling it to relief under Rule 59(e) or Rule 60(b)(6).

3.   <u>iiiTec Has Failed to Show that the Court Incorrectly Disposed of All Claims</u>

iiiTec argues that the court incorrectly granted summary judgment on all of its claims without addressing the "right to a license" claims asserted alternatively in Counts 2 and 3 of the Third Amended Complaint.[106]   iiiTec argues that the court incorrectly granted summary judgment on those parts of Counts 2 and 3 in which iiiTec alleged that, in the absence of either an express or implied license, MOC was required to grant iiiTec a license;[107]

---

[105]Oral Argument, Docket Entry No. 182, pp. 57:25-58:1.

[106]Plaintiff's Motion to Reconsider, Docket Entry No. 192, pp. 23-24.

[107]Third Amended Complaint, Docket Entry No. 146, p. 40 ¶¶ 124-25, and p. 42 137.

that if MOC licensed the Assigned IP to In-Depth, then In-Depth
failed in its separate obligation to sublicense the Assigned IP to
iiiTec;[108] and /or that iiiTec is entitled to a license from
Weatherford.[109]  Asserting that each of these alternative claims
remains outstanding, iiiTec argues that the court mistakenly
dismissed the entire case "with prejudice," and that even without
reconsideration of the Order and Judgment, it is error to dismiss
iiiTec's claims that are not tied to or otherwise related to the
implied license.[110]

Contrary to iiiTec's argument, § III.C of the June 25, 2021,
Memorandum Opinion and Order, titled "Application of the Court's
Implied License Conclusions to the Claims Asserted in Plaintiff's
Third Amended Complaint," forecloses iiiTec's argument that the
court incorrectly granted summary judgment on all of iiiTec's
claims.[111]  In that section the court explained that

> Plaintiff's Third Amended Complaint (Docket Entry
> No. 146), reasserts the same claims asserted in the
> Second Amended Complaint, and addressed in the court's
> December 1, 2020, Memorandum and Opinion (Docket Entry
> No. 144), i.e., claims for declaratory judgment (Counts
> I and II), a claim for breach of contract regarding the
> TDA (Count III), and a claim for attorney's fees pursuant
> to the Federal Declaratory Judgment Act (Count IV).[112]

---

[108]Id. at 40-41 ¶ 126 and 42-43 ¶ 138.

[109]Id. at 41 ¶ 129, 42 ¶ 137, 43 ¶ 142, and 43-44 ¶ 144.

[110]Plaintiff's Motion to Reconsider, Docket Entry No. 192,
p. 24.

[111]Memorandum Opinion and Order, Docket Entry No. 179,
pp. 39-40.

[112]Third Amended Complaint, Docket Entry No. 146, pp. 36-44.

The court's December 1, 2020, Memorandum and Opinion denied Defendants' motion for summary judgment on Plaintiff's two claims for Declaratory Judgment and breach of contract claim (Counts I-III) based on conclusions that Weatherford failed to show beyond dispute that Plaintiff does not have an implied exclusive license to Assigned IP.[113]  The court denied as premature Weatherford's motion for summary judgment on the claim asserted in Count IV for attorney's fees pursuant to the Declaratory Judgment Act.[114]  The court's conclusion that Plaintiff is unable to carry its burden of proving that MOC granted it an implied exclusive license to the Assigned IP is dispositive of the claims that Plaintiff has asserted in this action.  Absent an implied exclusive license to the Assigned IP, Plaintiff lacks either constitutional or prudential standing to seek Declaratory Judgment that Weatherford does not have rights to any "Assigned IP" subject to iiiTec's exclusive license (Count I), or, alternatively, that Plaintiff's exclusive license of the "Assigned IP" is valid and binds Weatherford (Count II),[115] and, therefore, cannot be entitled to attorney's fees pursuant to the Federal Declaratory Judgment Act (Count IV).[116]  Absent an implied exclusive license to the Assigned IP, Plaintiff also lacks standing to assert a claim for breach of contract regarding the TDA (Count III).[117]  Accordingly, the court concludes that Defendants are entitled to summary judgment on all of Plaintiff's claims because Plaintiff is unable to carry of its burden of proving that MOC granted it an implied exclusive license to the Assigned IP.[118]

---

[113]Id. at 13-18.

[114]Id. at 47.

[115]Memorandum and Order, Docket Entry No. 144, pp. 12-18, 23-24, and 37.

[116]Id. at 43.

[117]Id. at 39-41.

[118]Memorandum Opinion and Order, Docket Entry No. 179, pp. 39-40 (citing Memorandum and Order, Docket Entry No. 144, and Third Amended Complaint, Docket Entry No. 146).

For the reasons stated in the preceding sections of this Memorandum Opinion and Order, the court has explained that the TDA allowed MOC to license the Assigned IP either to In-Depth or the Developers, i.e., iiiTec and Petrowell; that MOC did, in fact, license the Assigned IP to In-Depth; and that In-Depth sublicensed the Assigned IP to iiiTec until 2017 when the sublicense was canceled due to non-payment of royalties. Once MOC licensed the Assigned IP to In-Depth, MOC could never have provided iiiTec an exclusive license to Assigned IP, and iiiTec could not have had a right to an exclusive license from MOC. Because In-Depth granted iiiTec a sublicense to Assigned IP that was properly terminated for non-payment in 2017, iiiTec has no right to a license from In-Depth. See Preston Wood & Associates, LLC v. RZ Enterprises USA, Inc., Civil Action No. H-16-1426, 2018 WL 2722328, at *6 (S.D. Tex. June 6, 2018) ("Indeed, under Texas law, quasi-contractual claims are unavailable when a valid, express contract exists that governs the subject matter of the dispute."). Because iiiTec's claim of right to a license from Weatherford depends on iiiTec having had a right to a license from MOC, iiiTec's claim of a right to a license from Weatherford fails for the same reason that iiiTec's claim of a right to a license from MOC fails. Thus iiiTec has failed to show that the court either ignored its alternative right to license claims, or incorrectly concluded that those claims should be dismissed with prejudice. Accordingly, the court is not persuaded

50

that iiiTec is entitled to the relief under Rule 59(e) or Rule 60(b)(6) because the court incorrectly granted summary judgment on all of its claims without addressing the "right to a license" claims asserted alternatively in Counts 2 and 3 of the Third Amended Complaint.

## IV. **Plaintiff's Motion to Seal Exhibits**

citing Federal Rule of Civil Procedure 26(c)(1)(G), iiiTec moves the court to seal Exhibits 2-12 attached to its Motion to Reconsider "to prevent disclosure of confidential 'Commercial Information.'"[119]  Although iiiTec has recognized that "[i]n exercising its discretion to seal judicial records, the Court must balance the public's common law right of access against the interests favoring nondisclosure,"[120] instead of showing why the balance of interests favors nondisclosure, iiiTec merely asserts that its exhibits

> contain confidential information which should be protected from public disclosure. . . The parties have entered into a protective order which allows for designation and protection of such material.
>
> At this stage of the proceeding, the filing of the Exhibits under seal will not prejudice the Defendants. However, if the specified Exhibits become part of the public record, it would be detrimental to potentially both parties as they are designated as "Confidential."

---

[119]Plaintiff's Motion to Seal Exhibits, Docket Entry No. 193, p. 2.

[120]<u>Id.</u>

> To give full support to the assertions and arguments in iiiTec's Motion, the documents must be filed to allow the Court to review the details of the parties' various arguments. However, the parties, as commercial entities, have an interest in keeping the terms of their agreements private.
>
> Thus, the balance of equities mandates the filing of these written responses and Exhibits under seal in order to protect the confidential information contained within. . . .
>
> . . .
>
> iiiTec has conferenced with Defendants, who do not oppose, and agree that it is in all parties' best interest to seal the Exhibits proposed herein.[121]

In <u>Binh Hoa Le v. Exeter Finance Corp.</u>, 990 F.3d 410, at 417-21 (5th Cir. 2021), the Fifth Circuit warned district courts of the need to guard against confusing the good cause standard applied to protective orders sealing documents produced in discovery, with the stricter balancing test to be applied "[o]nce a document is filed in the public record."  <u>Id.</u> at 419 (quoting <u>Vantage Health Plan, Inc. v. Willis-Knighton Medical Center</u>, 913 F.3d 443, 451 (5th Cir. 2019)).  Because the unopposed motion to seal filed in this case does not address the balancing test that courts are to apply when ruling on motions to seal documents filed in the public record, the motion to seal will be denied.

---

[121] <u>Id.</u> at 3.

## V. Conclusions and Order[122]

For the reasons stated in § II, above, Plaintiff's Opposed Motion for Leave to File Reply in Support of Plaintiff's Motion to Reconsider Memorandum Opinion and Order and Final Judgment and/or Motion for New Trial or to Modify the Judgment, Docket Entry No. 196, is **GRANTED.**

For the reasons stated in § III, above, Plaintiff's Motion to Reconsider Memorandum Opinion and Order and Final Judgment and/or Motion for New Trial or to Modify the Judgment, Docket Entry No. 192, is **DENIED**.

For the reasons stated in § IV, above, Plaintiff's Motion for Leave to Seal Exhibits to Plaintiff's Motion to Reconsider Memorandum Opinion and Order and Final Judgment and/or Motion for New Trial or to Modify the Judgment, Docket Entry No. 193, is **DENIED.**

**SIGNED** at Houston, Texas, on this the 14th day of January, 2022.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

---

[122]As the length of this Memorandum Opinion and Order indicates, the court has expended considerable time reading the parties' papers and performing a significant amount of independent research to be as fully informed as possible when addressing the parties' arguments. The failure to expressly address a particular argument in this Memorandum Opinion and Order reflects the court's judgment that the argument lacked sufficient merit to warrant discussion.